CONSOLIDATED BUNGING APPARATUS CO. *v.* P. SCHOENHOFEN BREWING CO.

(*Circuit Court, N. D. Illinois.* May 21, 1888.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—NOVELTY.

Reissued letters patent No. 10,284, granted February 6, 1883, to J. M. Pfaudler and others, for apparatus for regulating the pressure of gas in a series of fermenting vessels, by a pipe leading from each vessel to a common receptacle, whence the gas, on reaching a certain pressure, is allowed to escape, are void for want of novelty, similar devices having been well known in the art long before, as shown in patent granted in July, 1841, to C. O. Walpers, for a "fermenting apparatus," and in patent granted in March, 1867, to George Wallace for a "fermenting vat;" apparatus similar in operation and result having also been used by H. Sturm, in Indianapolis, in 1861, and by Peter Andrews, at Covington, in 1867.

2. SAME.

The contention that the gas-pipes in complainant's patent are designed to extend only into the gas chambers of the vessels, and not into the fermenting liquor as in the prior devices, if borne out by the claims of the patent, would not show the accomplishment of any other purpose than that of said devices, in equalizing the pressure, and in any case such an arrangement is anticipated by the device of F. M. Horning, patented in 1868, for regulating the pressure in a series of steam-boilers by pipes leading from their steam-spaces to a common receptacle.

In Equity. Bill for infringement.

*W. W. Leggett, Banning & Banning,* and *Dyrenfurth & Dyrenfurth,* for complainant.

*B. F. Thurston* and *C. P. Jacobs,* for defendant.

BLODGETT, J. The bill in this case charges the defendant with the infringement of reissued letters patent No. 10,284, granted February 6, 1883, to J. M. Pfaudler, E. J. Kelsey, J. Sullivan, and J. Sargent, "for apparatus for regulating the pressure in a series of fermenting vessels," the original patent having been granted to Pfaudler on the 2d day of July, 1878, and the application for the reissue having been filed August 26, 1879. The invention is stated in the specifications to have for its object "to provide an effective apparatus for equalizing the pressure in a series of hogsheads or other vessels containing beer, wines, or other liquids in a state of fermentation, and for regulating the pressure of the gas caused by such fermentation; so that it shall not exceed a certain number of pounds to the square inch, previously determined and gauged in said apparatus." The apparatus described in the specification consists of pipes leading from two or more fermenting tubs or vessels into a common gas receptacle or holder, from which the gas will be allowed to escape when the pressure reaches a certain limit, this limit being determined either by the ordinary pressure gauge, or by a water column, or any other device which will regulate the pressure, and allow a discharge when that pressure limit is exceeded; it being claimed that by the operation of this device the fermentation in the connected vessels is equalized, so that the contents of the connected vessels are kept in substantially the same fermenting condition. The patent contains seven claims, but infringement

is insisted upon in this case of only the first, second, sixth, and seventh claims, which are as follows:

"(1) Apparatus for equalizing and limiting the pressure of gas in a series of closed fermenting vessels, and permitting free access of the gas from one vessel to another throughout the series, consisting of separate gas conduits for each vessel, constructed, substantially as described, to tap the gas space of each vessel, a common closed conduit with which all said vessel-conduits communicate, and a pressure regulator governing the escape of gas from such common conduit whenever the pressure shall exceed a previously determined limit.

"(2) Apparatus for equalizing, limiting, and indicating the pressure in a series of closed fermenting vessels, and permitting a free access of the gas from one vessel to another throughout the series, consisting of separate gas conduits for each vessel, constructed, substantially as described, to tap the gas space of each vessel, a common closed conduit into which said vessel-conduits lead, a pressure regulator constructed to permit an escape of gas from said common conduit whenever the pressure shall have reached a previously determined limit, and a pressure indicating gauge."

"(6) A gas receiver, provided with one or more safety-valves and apparatus for gauging the pressure, and in communication with said receiver a series of vessel-conduits for permitting a free access of gas from one vessel to another, throughout a series of closed fermenting vessels, each conduit constructed to connect with the gas space of its vessel.

"(7) An apparatus for equalizing the pressure of gas in a series of closed fermenting vessels, and permitting a free access of the gas from one vessel to another, throughout the series; separate conduits for each vessel; a common gas receiver, with which said vessel-conduits communicate; a pressure regulator, governing an escape orifice, whereby gas in excess of a fixed limit of pressure is permitted to escape; and, in connection with said escape orifice, a conduit for carrying away the said escaping gas, substantially as described."

The defense mainly relied upon is that the patent is void for want of novelty. The proof in the case shows that devices for equalizing the pressure in a series of vessels containing liquids in a state of fermentation were well known in the art long before this inventor entered the field. Such devices are shown in the patent granted in July, 1841, to C. O. Walpers, for a "fermenting apparatus;" and in a patent granted in March, 1867, to George Wallace, for a "fermenting vat;" and it is further insisted by the defendant that the apparatus shown and described in this patent has long been in use for the purpose of equalizing the pressure of steam in a battery of steam-boilers; and also, further, that apparatus similar in its operation and result was put in public use by H. Sturm, at Indianapolis, Ind., as early as 1861, and also by Peter Andrews in the distillery of Boyle, Miller & Co., at Covington, Ky., as early as 1867. Defendant's proof also tends to show several other anticipating uses, but I do not deem it necessary to consider or discuss them for the purposes of this case. It is objected on the part of the complainant that the Walpers and Wallace devices show that the gas-pipes leading from the several fermenting vessels into the common gas receptacle or equalizing pipe extended down into the fermenting liquid, and that, therefore, they do not anticipate the complainant's device. It may be said, I think, that it is only inferentially and argumentatively by means

of the disclaimer in the complainant's patent that any conclusion can be drawn that it was intended that the pipes should only tap the gas chamber, and should not extend into the fermenting liquor; there being no express statement in the specifications that the connecting pipes shall only tap the gas spaces of their respective fermenting vessels. But, waiving the question as to whether the complainant's patent confines the construction to pipes which shall merely tap the gas chamber of the fermenting vessel, it is sufficient to say that it is obvious that, where two closed vessels or tubs containing liquids in the process of fermentation are connected by pipes,—whether such pipes only tap their respective gas chambers or whether they extend into the liquid,—the effect of such action will be to equalize the pressure in the vessels so connected. And it is equally obvious that, whether the pipes only extend into the gas space, or whether they shall be extended into the liquid, depends upon the results or purposes for which the equalization of pressure is desired. If, for instance, it is desired to use this apparatus in connection with the ripening of beer, in the "kreusen stage," where a slight fermentation is to be kept up while the beer is undergoing the process of clarification in the shavings casks, the connecting pipes should only extend into the gas space, so as to quietly draw off the gas as it is evolved by fermentation into the common gas chamber or receiver, where it is allowed to escape into the open air when the pressure reaches a predetermined point; while it is equally clear that, if it were desired to stimulate fermentation in the respective casks, such results would be more readily obtained by causing the gas from the tub or vessel in the condition of most active fermentation to be discharged into the liquid of the other vessel. But this would, of course, prevent the clarification or settling of the contents of the vessels so connected. I think, however, no one can even casually inspect the drawings of the Wallace and Walpers apparatus, as shown in their respective patents, without seeing that beyond doubt the apparatus described in both their patents would equalize the pressure in the connected fermenting vessels. A sketch of the Sturm apparatus is shown upon page 19 of the defendant's record, and is only intended as an illustration from memory of the device which Gen. Sturm testified he constructed and put in operation in breweries in the city of Indianapolis during the spring of 1861, or possibly a little earlier; and it appears from the testimony of Gen. Sturm and his illustrative drawing that this apparatus was only intended to allow the escape of the gas from the gas spaces above the liquids in the connected vessels or casks. The Andrews apparatus was put in use in a distillery, and was intended to equalize the pressure in the mash tubs while in the fermenting process; and, as testified to by Mr. Andrews, the pipes in his apparatus did not extend into the liquid, but only reached into the gas space, so as to carry off the gas as it was evolved in the respective vessels, and equalize the pressure between them. I do not understand, either from the oral argument or briefs of complainant's counsel, that the fact is seriously contested that Sturm and Andrews each constructed apparatus and put them in use at the times and places to which they testify, which were

intended to equalize the pressure in a series of fermenting vessels by means of pipes connecting such vessels with a common receptacle, or gas holder, from which the gas was to escape when it reached a certain pressure; the main contention being that in both the Sturm and Andrews apparatus the connecting pipes extended into the liquid, and hence did not tap the gas chambers only of the fermenting vessels. Whether the pipes leading from the fermenting tubs into the common receptacle or pipe whereby the pressure was to be regulated in the Sturm apparatus and in the Andrews apparatus reached below the gas space into the liquid or not, may be said to be somewhat a matter of doubt from all the proof in the case, although I incline to the conclusion that the weight of testimony is in favor of defendant on this point; but that those devices equalized the pressure in the vessels thereby connected can admit, I think, of no doubt. So that from this testimony alone we have the fact established that it was old to regulate and equalize the pressure in a series of hogsheads or other vessels containing fermenting liquids, long before the Pfaudler invention is claimed to have been made.

The testimony shows that in October 1868, a patent was granted to F. M. Horning for a device for equalizing the pressure of steam in a battery of steam-boilers in which the steam from each boiler was led by a pipe into a common chest or receptacle, from which the steam was taken for the purpose of working, thereby securing a uniform pressure in each boiler; and the testimony of Henry Jones, a witness called in behalf of defendant, shows (if such fact were not a matter of common knowledge) that as early as 1858 he knew of the use of a device, similar in its mode of operation and result to that shown in the Horning patent, for equalizing the pressure of steam in a battery of steam-boilers by pipes leading from the steam space at the top of each boiler into a common chest or receptacle from which the steam was led to the cylinders for the purpose of working. This Horning apparatus, and the steam equalizing apparatus described in Jones' testimony, show devices in their mode of operation and result precisely like that which is claimed to be covered by Pfaudler's patent, only that instead of equalizing the pressure of gas evolved in the process of fermentation those devices equalized the pressure of steam evolved from water by heat. There is no difference in principle or mode of operation between them, and I think it cannot admit of a doubt that the Pfaudler device, when stripped of a multiplicity of apparently unnecessary cocks and pipes and pressure gauges, is nothing but the apparatus which has been used for many years to equalize the pressure of steam in steam-boilers. It did not require invention, as it seems to me, but only common mechanical skill, to apply the well-known device for equalizing the pressure of steam in a battery of steam-boilers to the equalizing of the pressure of gas evolved by fermentation in a series of fermenting casks, whenever it was found to be useful to equalize the pressure in the fermenting vessels at any stage in the manufacture of beer or wine.

This patent is, in no sense, a process patent, and has nothing to do, and purports upon its face to have nothing to do, with the manufacture

of beer at any particular stage in its process of fermentation, or manufacture. It is simply a patent for an apparatus, and as applicable to other fermenting liquids as it is to beer; and, as I have already intimated, equally applicable to beer in the process of fermentation, where it is not desirable that the contents of the fermenting vessels shall be kept as nearly as possible at rest; but, on the contrary, where agitation is desired for the purpose of increasing fermentation; for I repeat what I have already said, that I do not think that merely because Pfaudler says in a disclaimer that he does not intend to describe an apparatus constructed and operating like that described in the English patent to Yonil of September, 1854, he necessarily intended that the fermenting vessels in his apparatus must, under all conditions and purposes of use, have a gas space above the liquid, and that his connecting pipes could only extend into this gas space, and not below it, into the fermenting liquid.

My views upon this question of novelty make it unnecessary that I should discuss or consider the question also made by defendant as to the validity of this reissue by reasons of the claims in the reissue differing from, and, as it is insisted, being expanded from, that of the original patent. I am, therefore, of opinion that the defense of want of novelty is fully sustained, and that this bill should be dismissed for want of equity.